UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 5: 04-027-DCR |
| Plaintiff/Respondent, | ) | and |
| | ) | Civil Action No. 5: 13-7286-DCR-CJS |
| V. | ) | |
| | ) | |
| NEIL S. CLARK, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendant/Movant. | ) | **AND ORDER** |
| | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On May 1, 2012, Defendant Neil Clark pleaded guilty in Frankfort Criminal Action No. 3: 12-005-DCR to conspiring to knowingly and intentionally distributing a quantity of pills containing oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846. This offense also constituted a violation of the terms of his supervised release imposed on May 28, 2004, in Lexington Criminal Action No. 5: 04-027-DCR. [Lexington Record No. 59][1]

At the conclusion of the sentencing hearing held on August 21, 2012, Clark was sentenced to a term of imprisonment of 187 months in the Frankfort case. [Frankfort Record No. 61] The Court also held a final revocation hearing in Lexington Criminal Action No. 5: 04-027-DCR at the time of the sentencing hearing in the Frankfort case. [Lexington Record No. 129]

---

[1]     On February 21, 2012, this action – Lexington Criminal Action No. 5: 04-027 – was transferred to the undersigned. [Lexington Record No. 126]

-1-

The Court revoked supervised release in the Lexington matter and sentenced Clark to 27 months imprisonment, to run consecutive to the 187-month sentence imposed in Frankfort Criminal Action No. 3: 12-005-DCR. [Frankfort Record No. 61, p. 2; Lexington Record No. 130, p. 2]

On June 25, 2013, Clark filed a motion to vacate, set aside, or correct the sentence imposed for his violation of supervised release in Lexington Criminal Action No. 5: 04-027-DCR. [Lexington Record No. 133] According to Clark, he recalls pleading guilty to the drug offense (*i.e.*, the Frankfort case), but "does not recall ever actually pleading guilty to the violation of supervised release." Therefore, he indicates that the Court "will have to review the Record to determine the legal status of the plea of the violation." [*Id.*]

Clark also asserts that he was advised during the sentencing hearing on either two or three occasions that he would not be penalized for the violation of supervised release. [*Id.*, at p. 5] Additionally, he contends that his counsel provided ineffective assistance because the attorney "had to have heard the sentencing Judge repeatedly state there would not [be] any penalty for the violation of supervised release . . ." Despite these alleged representations by the Court, Clark claims that his attorney failed to object when the Court imposed a consecutive sentence for the supervised release violation. [*Id.*, p. 5][2] However, a review of the transcript of the August 21,

---

[2]     Clark's third claim of ineffective assistance of counsel is tied directly to the factual assertions underlying his second claim. Therefore, if his second claim is factually erroneous, the basis for the third claim of ineffective assistance of counsel also fails. Clark asserts that the sentence imposed for his supervised release violation was improper because the Court advised the defendant on two or three occasions during the August 21, 2012 hearing that the penalty for the violation would not be imposed to run consecutive to the sentence imposed for the more recent drug conviction. Clark claims that his attorney should have objected to the "illegal" sentence because he must have heard the same statements that the defendant heard.

In the memorandum filed in support of his § 2255 motion, Clark explains his third claim as follows:

The movant has presented facts that can be confirmed by the review of the plea and

-2-

2012 hearing establishes that Clark's claims are factually incorrect.  In addition to the fact that Clark was placed under oath and admitted to the violation of supervised release, he was never advised that he would not be penalized for this violation.

The transcript of the hearing held on August 21, 2012, was filed in the Frankfort Criminal Action on July 23, 2013. [Frankfort Record No. 73] The following excerpts are relevant to Clark's claim that he does not recall admitting to the violation of supervised release.

[THE COURT]        Madam Clerk, if you could call the matter scheduled for 10:00, please.

THE CLERK:         Yes, your Honor.  Frankfort Criminal Action No. 12-5 and Lexington Criminal Action No. 04-27, United States of America versus Neil S. Clark.  Called for sentencing and revocation proceedings.

                            **    **    **

THE COURT:         . . . This matter has been scheduled for a hearing today on two matters, actually; Frankfort Criminal Action No. 12-05, and also a supervised release violation from Lexington Criminal Action No. 04-27.

Mr. Butler, I understand you wish to proceed on both matters at thsi time, is that correct?

---

sentencing transcripts.  As such, it is totally evident that the Attorney, William M. Butler, Jr., failed to make any attempt to inform the Court that "just moments before . . ." the Court clearly stated that the Movant would [n]ot be penalized for the revocation violation.  Had the Attorney brought the fact to the Court's attention that the Court repeatedly stipulated there would be no penalty, then the Court may have reconsidered the structure of the sentence to have been concurrent, and not consecutive.

                            **    **    **

In the Movant's case, the Court repeatedly stated that there would be "<u>no penalty</u>" for the revocation violations, then immediately proceeded to impose a consecutive term of imprisonment.  The attorney representing the Movant made no objections or attempts to correct the Court . . . or at a minimum, bring the matter to the Court's attetion [sic] that only moments before, the Court specifically stated, [there would be no penalty].

[*See* Lexington Record No. 133-1, p. 7, ¶¶ 17, 20.]

MR. BUTLER:        Yes, your Honor; that's correct.

THE COURT:        All right.  Thank you.

At the appropriate time, I will ask the Clerk to place the defendant under oath so I can ask him questions with respect to supervised release violation, but let me first review the presentence report in the case.

The Court has received the presentence report prepared July 17, 2012, and disclosed to the parties.  Let me at this time confirm that Mr. Clark has received a copy of the presentence report and also discussed it with his attorney.  Is that correct , Mr. Clark?

THE DEFENDANT:        Yes, your Honor.

THE COURT:        All right.  There is an objection that will need to be addressed in just a moment.

Before I get to the objection, let me also confirm that Mr. Clark has received the supervised release violation report and also the addendum to the report.  The addendum to the supervised release violation report in Case No. 04-27 is Judge Forester's case.  It's dated February 15, 2012.

Mr. Clark, have your received a copy of that report and the addendum, as well?

THE DEFENDANT:        Yes, sir.

THE COURT:        All right.

Let me confirm that it's the intention of the defendant to admit to the violation contained in the supervised release violation report.  I believe a preliminary hearing was held before the magistrate judge.[3]

MR. BUTLER:        Yes, your Honor.

THE COURT:        Madam Clerk, if you could please place the defendant under oath to answer questions with respect to the supervised release report.

---

[3]        The preliminary hearing on the supervised release violation in Lexington Criminal No. 04-27 was held before United States Magistrate Judge Robert E. Wier on February 16, 2012. [Lexington Record No. 124]

THE CLERK:          Yes, your Honor.

NEIL S. CLARK, DEFENDANT, SWORN

THE COURT:          Thank you.  You may be seated.

EXAMINATION

THE COURT:

Q.      Mr. Clark, just a couple of questions for you about the supervised release violation report.  You are the same individual that's identified in that report, correct?

A.      Yes, sir.

Q.      The report alleges a violation that's based upon the conduct that gives rise to the Frankfort action.  Do you acknowledge that in fact that conduct occurred?

A.      Yes, sir.

Q.      All right.  Now, you indicated you received a copy of the report.  Let me just briefly review with you the penalties that the guidelines would call for for a violation of supervised release in that matter.

The violation would be characterized as a Grade A violation.  Combined with a criminal history category 4, you would be looking at a range if imprisonment under the guidelines of 24 to 30 months; however, the Court could impose up to 36 months for a violation.  That's the maximum term that could be imposed by statute.

Title 18, Section 3583, would indicate that the maximum period of incarceration for the violation would be 36 months.  But the guidelines, which are called policy statements and are not binding on the Court, the guidelines would indicate a range of 24 to 30 months based on that violation.

And do you understand that that's what the guidelines would call for; is that correct?

A.      Yes, sir.

Q.      All right.  As we proceed with the sentencing in the Frankfort case, Case No. 12-05, we will be proceeding with what's called allocution in a few moments, and I will give your attorney a chance to address the Court, and you as well.

I'll be asking the parties to address the supervised release violation as well at that time, so we will be handling the cases together.

Do you understand and agree with that procedure?

A.      Yes, sir.

Q.      All right.  Thank you.

[Frankfort Record No. 73, pp. 2-5]

The portion of the transcript of the August 21, 2012 hearing that follows the above discussion and testimony was filed under seal.  It appears in the record of the Frankfort Criminal Action at Record No. 64.  In relevant part, this portion of the transcript contains the following finding by the Court regarding Clark's supervised release violation.

[THE COURT]      Thank you.  And for the record, I will make a finding that the defendant has acknowledged and admitted the violation outlined in the supervised release violation report that I have just noted and reviewed with him, with Mr. Clark.

[Frankfort Record No. 64, p. 2]  The remaining section of this portion of the sealed transcript contains the Court's findings regarding Clark's role enhancement under the United States Sentencing Guidelines.

After announcing its findings regarding the defendant's objections to his Presentence Investigation Report [*Id.* at p. 3-5], the Court proceeded to review the relevant guideline calculations contained in the report. [This review is found at pages 6-7 of the portion of the transcript filed as Frankfort Record No. 73.]  Based on the defendant's status as a career

-6-

offender, Clark's guideline range for imprisonment under the applicable United States Sentencing Guidelines was determined to be 188 to 235 months. [Frankfort Record No. 73, p. 7]

Thereafter, the Court held a sidebar conference with the parties to address the United States' motion for a downward departure under United States Sentencing Guideline ("USSG") § 5K1.1. At the conclusion of this sidebar conference, the Court granted the government's motion and agreed to consider its recommendation of up to a 15% reduction of the defendant's sentence in the Frankfort criminal action. [*See* Frankfort Record Nos. 50 and 72.]

The transcript of the August 21, 2012 hearing clearly reflects that the parties then addressed the Court in allocution with respect to both criminal actions.

> THE COURT:  All right, thank you. Of course, this portion of the sentencing proceeding will remain under seal, the bench conference will remain under seal pending further orders of the Court.
>
> We will proceed at this time with allocution as to both the sentencing in Case No. 12-05, as well as the supervised release violation in the case transferred from Judge Forester, Lexington Criminal No. 04-27.
>
> And Mr. Butler, [I will] hear from you first and also from Mr. Clark, if he would like to address the Court. And afterwards, I'll hear from Mr. Thompson on behalf of the United States.
>
> MR. BUTLER:  Your Honor, I do think Mr. Clark wants to address the Court.

**     **     ** 

In addition to addressing the defendant's strong family ties, counsel for Clark noted the sentencing disparity between Clark's non-binding guideline range of 188 to 235 months of

imprisonment compared with the penalties faced by 24 related defendants who had entered guilty

pleas in the state court system.  Mr. Butler noted that,

> In this particular case that Neil has been involved in, there are actually 25 other individuals involved in the same conduct and actually in the same case.  His state court case involving those 25 people were dismissed, according to him and his co[-]defendant Mr. Penn, and they've been removed to state court – or excuse me, to federal court.
>
> However, of the remaining 25 individuals, 24 of them have entered guilty pleas and received sentences ranging from a misdemeanor up to ten years.  However, I believe that all those sentences were probated.

[Frankfort Record No. 73, pp. 9-10]

> Defendant Clark then made the following statement to the Court in allocution:
>
> THE DEFENDANT:        Yeah.  I agree with everything he said.  I apologize to the Court, to my family.  Mr Cotton over to my right here, my probation officer.
>
> I accept full responsibility.  I – you know, for the conspiracy.  And I just want you to know that I'm sorry and that, you know, I hope when you consider what you're going to do to me, just to be as easy as possible on me.  And I'm sorry.

[*Id.*, pp. 10-11]

Thus, a review of all parts of the transcript of the August 21, 2012 hearing unequivocally

establish that: (1) Defendant Clark admitted under oath the violation of supervised release; and

(2) the Court did not indicate or in any infer that he would not receive a separate punishment for

the violation of supervised release.[4]  Nothing in the record supports Clark's claim that he was

induced to admit the violation of supervised release.  And nothing in the record supports Clark's

---

[4]       The Court should also note the obvious.  A standard condition of supervised release is that a defendant not commit another federal, state or local crime.  By entering a guilty plea, under oath, to Count 1 of Frankfort Criminal Action No. 3: 12-005-DCR, Clark thus admitted that he violated the terms and conditions of supervised release imposed in Lexington Criminal Action No. 5: 04-027-DCR.

argument that his attorney provided ineffective assistance of counsel by failing to object to inconsistent judicial representations which were never made.

The Court began its explanation of the sentence to be imposed by addressing the argument of sentencing disparity and the appropriate level of departure under the United States Sentencing GuidelineS where, as here, a defendant's cooperation results in the conviction of others who receive modest sentences. [*Id.*, pp. 11-13]  In this regard, the Court noted that, when considering the government's motion for cooperation under USSG §5K1.1, Clark would not be penalized based on lenient action taken by state prosecutors.  In other words, the reduction of his sentence in Frankfort Criminal Action No. 3: 12-005 would not be diminished because similarly-situated state defendants had not received a severe punishment for similar conduct.[5]

---

[5]     Addressing the interrelationship between sentencing disparity between the state and federal courts and the impact of that disparity under USSG § 5K1.1, the Court made the following comments during the August 21, 2012 hearing:

> . . . The Court looks very seriously at violations of the law and has individuals that appear before it that have been convicted time and time again in state court, only to get probated sentences, no deterrence whatsoever.
>
> The individual appears in federal court and is looking at a very lengthy sentence, and they wonder what's happened.  "I've done the same conduct, I've engaged in the same conduct time and time again and I got slapped on the wrist, and suddenly I'm looking at a very lengthy sentence," and the individual wonders what happened.
>
> And they should be wondering really not what happen in the federal proceeding but what happened in the state court.  That's something this Court really can't do anything about.
>
> But that being the case, I'm not going to penalize Mr. Clark based on lenient action that's been taken by state prosecutors.  I'm not – he shouldn't be blamed for that.
>
> So to the extent that he's attempted to help himself [by cooperating with law enforcement], he's done I believe all he can do to this point, so he will not be – certainly will not be penalized for that.  But it's important to the Court to have that information [*i.e.*, the results of the state prosecutions] before it.

[Frankfort Record No. 73, pp. 12-13]  In light of the defendant's cooperation which resulted in the

The Court then turned its attention to the non-binding nature of the United States Sentencing Guidelines, the defendant's criminal history and status as a career offender, and other relevant sentencing factors under 18 U.S.C. § 3553. [*Id.* pp. 13-16] In relevant part, the Court noted that, "[it] has before it also a supervised release violation, and many of those same [§ 3553] factors are considered in determining appropriate punishment for supervised release violations. They go into that same analysis. Again, the guidelines are not binding for a supervised release violation. [Section] 3583 lists all of the 3553 factors, save two, if I'm not mistaken." [*Id.*, p. 13]

After considering all relevant factors, the Court determined that an appropriate starting point for calculating the term of imprisonment in the Frankfort criminal action would be 220 months. However, as previously noted, this term was reduced by approximately 15% based on the defendant's cooperation with law enforcement. As a result, a total term of incarceration of 187 months was imposed in Frankfort Criminal Action No. 3: 12-005.

With respect to the sentence imposed for the supervised release violation in Lexington Criminal Action No. 5: 04-027, the Court provided the following explanation:

> I'm also taking into account the defendant's acknowledgment of the violation from the matter transferred here from Lexington. I'm going to impose a sentence in the middle of the guideline range in that case of 27 months. The range is 24 to 30 months. I do believe that a sentence in the middle of the range would be appropriate.
>
> That sentence in that matter will run consecutive to the term that will be imposed in Frankfort Criminal Action No. 12-05. If the Court were to run the sentence for

---

prosecution of others, the Court reduced his sentence in the Frankfort Criminal Action by approximately 15%, although an argument could be made that Clark's cooperation did not support such a reduction based solely on the sentences imposed in the related cases.

the supervised release violation anything other than consecutive, it would unduly diminish the seriousness of the particular offense of the violation of supervised release that was previously imposed.

And the Court notes, in looking at the criminal history section, that of course the original sentence that was imposed by Judge Forester was reduced from what it would have been originally. He did reduce that sentence and then imposed a term of supervised release.

And then taking into account all of those same factors of 3553 that were incorporated through 3583 for the supervised release violation, those same factors that I've just mentioned would support a sentence in the middle of the guideline range for the supervised release violation.

Therefore, the effective total sentence in the case when the Court runs these sentences consecutively would be a total term of imprisonment of 214 months.

[*Id.*, pp. 16-17]

Neither the United States nor the defendant objected to the sentence imposed in either matter. Likewise, the parties did not made any objections under *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), or asked the Court to make additional findings to support the sentence in either case. [*Id.*, p. 22]

In summary, all of Clark's claims are based on erroneous factual assertions. Additionally, his claim of ineffective assistance of counsel fails because the defendant cannot establish either deficient performance or prejudice under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must offer some evidence that his attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To meet this burden, the defendant must show that "counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688.

-11-

Further, judicial scrutiny of an attorney's performance is "highly deferential," and includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Here, the Court cannot conclude that Mr. Butler's performance was deficient in failing to object to a concurrent sentence for the supervised release violation that was in the middle of the non-binding guideline range for such a violation *and* was consistent with U.S.S.G. §5G1.3, Application Note 3.(C), and §7B1.3(f), Application Note 4. And more importantly, the sentence imposed for the supervised release violation was in no way inconsistent with earlier statement of the Court. Thus, the defendant cannot demonstrate that, but for the alleged errors of his attorney, the results of the proceeding would have been different. In other words, Clark cannot demonstrate any errors by his attorney and he cannot show any resulting prejudice in any event.[6]

Based on the foregoing analysis of Defendant Clark's motion and arguments, it is hereby

**ORDERED** as follows:

1.     The Clerk of the Court is **DIRECTED** to file in the record of this proceeding, the full transcript of the August 21, 2012, hearing held in this action and in Frankfort Criminal Action No. 3: 12-005-DCR. A portion of that transcript appears in the record of this proceeding as Record No. 131. The remaining portions of the transcript appear as Record Nos. in Frankfort

---

[6]     Clark has not made a substantial showing of the denial of a constitutional right. More specifically, he has not demonstrated that "reasonable jurists would find this Court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Likewise, Clark has not made a colorable argument that jurists of reason would find it debatable whether the district court was correct in its procedural rulings. *Id.* at 484.

Criminal Action No. 3: 12-005-DCR at Record Nos. 64, 72 and 73. The Clerk need not file these transcripts under seal.

2. Defendant/Movant Neil S. Clark's motion to vacate, set aside or correct the sentence imposed for his violation of supervised release [Record No. 133] is **DENIED**.

3. The habeas proceeding [Lexington Civil Action No. 5: 13-7286-DCR-CJS] is **DISMISSED** and **STRICKEN** from the docket.

4. The Court declines to issue a Certificate of Appealability regarding any issue raised herein.

This 24th day of July, 2013.

Signed By:

*Danny C. Reeves* DCR

United States District Judge